**SO ORDERED.**

**SIGNED this 07 day of November, 2007.**



_____
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

Opinion designated for on-line use; Not designated for print publication

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br>**KENNETH B. KIERL** and<br>**MELISA C. KIERL,**<br>       DEBTORS. | **CASE NO. 06-21391**<br>**CHAPTER 7** |
| **ERIC C. RAJALA, Chapter 7 Trustee,**<br>       PLAINTIFF,<br>v.<br>**COMMUNITY BANK OF WICHITA,**<br>       DEFENDANT/<br>       THIRD PARTY PLAINTIFF,<br>v.<br>**KENNETH B. KIERL,**<br>       THIRD PARTY DEFENDANT. | **ADV. NO. 07-6046** |

**MEMORANDUM OPINION AND ORDER GRANTING CHAPTER 7 TRUSTEE'S
COMPLAINT TO RECOVER PREFERENTIAL TRANSFER
AND FINDING COUNT ONE OF THIRD PARTY COMPLAINT MOOT**

The matter under advisement is the Chapter 7 Trustee's Complaint to avoid as preferential the transfer of a security interest in a 2003 GMC Yukon Denali vehicle owned by the Debtors. The parties have submitted the matter based upon stipulated facts. Having considered those facts and the arguments of counsel presented in their briefs,[1] the Court is now ready to rule. For the following reasons, the Court grants the Complaint.

Plaintiff Eric C. Rajala, the Chapter 7 Trustee (hereafter Trustee) appears by Eric C. Rajala. Defendant Community Bank of Wichita (hereafter Bank) appears by Martin R. Ufford of Redmond & Nazar, L.L.P. There are no other appearances. The Court has jurisdiction.[2]

**FINDINGS OF FACT.**

The parties have stipulated to the following facts. On December 29, 2005, Bank made a loan to Melisa C. Kierl in the original amount of $28,831.96. The loan was secured, in part, by a 2003 GMC Yukon Denali, which Debtors owned before the loan was made and which was subject to a lien in favor of GMAC. Melisa C. Kierl signed a Kansas Application for Duplicate, Secured, or Reissued Title, dated December 29, 2005. There was no paper title for the vehicle, since Kansas had gone to an e-title system several years earlier.

---

[1] Although the pretrial order provided for the filing of simultaneous reply briefs on or before October 24, 2007, neither party filed a reply brief.

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A proceeding to determine, avoid, or recover a preference is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(F). In addition, the parties have stipulated to the jurisdiction of the Court and consent to trial and entry of a final order by the Bankruptcy Court.

On January 4, 2006, GMAC issued a lien release for the GMC Yukon and transmitted it to the Bank. In January 2006, the Bank issued a check for $20.00 payable to the Sedgwick County Treasurer. On the same day, Bank delivered the title application and the check to the Sedgwick County Treasurer.

By letter dated January 25, 2006, the Sedgwick County Treasurer rejected the title application for the following reason:

> Our records indicate that a person with your name owes delinquent taxes. Please check with the Appraiser's Office a 660-9250 for information. We cannot renew your tag(s) until this matter is settled. Use PP 618674 as a reference #.

A printout of the Sedgwick County Delinquent Tax Listings for PP618674 shows Kierl Financial Group, Inc. as the delinquent taxpayer, not Melisa C. Kierl. After unsuccessful attempts to have the Kierls pay the delinquent taxes to satisfy the Sedgwick County requirements to get a new title issued that would show the Bank's lien, in July 2006, the Bank paid $153.74 to the Sedgwick County Treasurer to satisfy the delinquent taxes owed by Kierl Financial Group.

In July 2006, the Bank resubmitted the vehicle application to the Sedgwick County Treasurer. This time the application was accepted. On July 11, 2006, the Kansas Department of Revenue issued a title and registration receipt showing the Bank's lien. Melisa Kierl and Kenneth Kierl filed for relief under Chapter 7 on September 7, 2006.

The GMC Yukon was property of the Debtors on December 29, 2005, when the Bank was granted a security interest, and at all relevant times thereafter. Assuming the transfer is not set aside, the Debtor's transfer of a security interest in the vehicle will enable the Bank to receive more than it would receive if the transfer had not been made and the Bank had received payment under Chapter 7.

Trustee filed a Complaint to Avoid and Recover Preferential Transfer under §§ 547, 550, and 551 on March 1, 2007. Bank answered the Complaint and joined with its answer a two count third party complaint against Debtors. The first count is to Determine Sufficiency of Reaffirmation of Debt Secured by a 2003 Dodge Ram. A reaffirmation agreement as to this debt was filed on June 1, 2007. This count is moot. The second count was for turnover of the GMC Denali. Debtors defaulted on this count, and an order granting default judgment was entered in July 7, 2007. It provides for turnover of the vehicle to the Trustee for immediate liquidation and sale pursuant to § 363, with the Trustee to hold the proceeds pending the outcome of the preference action.

**ANALYSIS AND CONCLUSIONS OF LAW ON PREFERENCE COMPLAINT.**

The only element of a preferential transfer as defined by 11 U.S.C. § 547 (b) which the Bank contests is the requirement that the transfer of the security interest was made within 90 days before the filing of the petition.[3] Pursuant § 547(e)(2), for purposes of a preferential

---

[3] The Pretrial Order enumerates the six elements of the Trustee's claim: "In order to prevail on his preferential transfer complaint, plaintiff must prove that the transfer (1) is of an interest of the debtor in property; (2) is for the benefit of a creditor; (3) is made for or an account of antecedent debt owed by the debtor before the transfer was made; (4) is made while the debtor was insolvent; (5) is made on or within ninety days before the date the bankruptcy petition was filed; and (6) allows a creditor to receive more than the creditor would other wise be entitled to receive from the bankruptcy estate." The order also states there are no issues of fact because of the parties' stipulation.
    As to issues of law, the pretrial order identifies the following: (1) When was the transfer of the security interest in the 2003 GMC Yukon made; (2) when was the transfer perfected; (3) was debtor insolvent on the date of transfer; (4) did the transfer allow the bank to receive more that it would otherwise be entitled from the bankruptcy estate.
    Issues 1 and 2 concern the date of perfection of the security interest, and the Court addresses this issue. Issue 3, insolvency, need not be addressed. Because the Court finds that the transfer occurred in July and within the 90 days before filing, the § 547(f) presumption of insolvency during the 90 days prepetition is present. Debtors have not attempted to rebut the presumption. The parties have stipulated to issue 4.

4

transfer analysis, the time of the transfer of a security interest is determined by the date of perfection. The subsection provides:

> (2) For the purposes of this section, . . . , a transfer is made -
>
> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, . . . [or]
> (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days;

If, as the Trustee contends, perfection occurred on July 11, 2006, less than 90 days before the date of filing, the Trustee may avoid the security interest.[4] If, as Debtors contend, the security interest was deemed perfected in January, 2006, within 30 days of the transfer of the security interest, the transfer was not preferential.[5]

The Court finds that the security interest was not perfected until the Department of Revenue accepted the application for certificate of title and noted the lien in its records in July, 2006, less than 90 days prepetition. In Kansas in January 2006, the filing of a financing statement was not necessary or effective to perfect a security interest in property subject to a certificate of title statute of the state.[6] As to such property, a security interest could be perfected only by "compliance" with the certificate of title laws.[7] The applicable certificate of title statute

---

[4] *See* 11 U.S.C. § 547(e)(2)(B).

[5] *See* 11 U.S.C. § 547(e)(2)(A).

[6] K.S.A. 2005 Supp. 84-9-311(a)(2).

[7] K.S.A. 2005 Supp. 84-9-311(b); *Morris v. Hicks (In re Hicks)*, 491 F.3d 1136,1140 (10th Cir. 2007) (holding a security interest in a vehicle may be perfected only by compliance with the state's certificate of title laws); *In re Charles*, 268 B.R. 575, 576/77 (Bankr. D. Kan. 2001) (holding K.S.A. 84-9-302(c), the predecessor to K.S.A. 84-9-311, provided sole means to perfect a security interest in a motor vehicle under Kansas law); *Morris v. Intrust Bank, N.A. (In re Anderson)*, 351 B.R. 752, 754 (Bankr. D. Kan. 2006) (holding that a security interest in certificate of title property may be perfected only by compliance with the requirements of the certificate of title statutes).

5

was K.S.A. 2005 Supp. 8-135d, establishing electronic certificates of title and providing that article 1 chapter 8 of the Kansas Statutes Annotated applies to such certificates. K.S.A. 2005 Supp. 8-135(c)(6), included in article 1 of chapter 8, provided in part as follows regarding notation of liens:

> . . . When a person acquires a security agreement on a vehicle subsequent to the issuance of the original title on such vehicle, such person shall require the holder of the certificate of title to surrender the same and sign an application for a mortgage title in form prescribed by the division. Upon such surrender such person shall immediately deliver the certificate of title, application, and a fee of $10 to the division. Upon receipt thereof, the division shall issue a new certificate of title showing the liens or encumbrances so created, but no more than two liens or encumbrances may be shown upon such a title.

The treasurer for the county of residence of the owner of the vehicle collected all certificate of title fees and forwarded the originals of all applications to the Secretary of Revenue.[8]

Pursuant to the foregoing statutes, the exclusive manner for Bank to perfect its security interest in the GMC Yukon was by submitting an application for a secured title and the fee to the Sedgwick County Treasurer, which the Bank did in January. The treasurer was then required to forward the application and the state's portion of the fee to the Department of Revenue, which the treasurer did not do in January. The department would then issue a new electronic certificate of title showing the Bank's lien. As to the Bank's security interest, this procedure was not completed until the Bank submitted its application to the treasurer a second time in July 2006, and the treasurer then forwarded it to the department. The lien was not noted on the electronic title until July 11, 2006, within 90 days prepetition.

---

[8] K.S.A. 2005 Supp. 8-145.

Bank argues that its security interest was perfected prior to the completion of this process in July. It asserts that submission of the application and the appropriate fee to the Sedgwick County Treasurer in January 2006 perfected the security interest because the Bank did all that was required to perfect and the treasurer wrongfully returned the application.[9]

Bank relies upon Article 9 of the Uniform Commercial Code (UCC) in support of its position that its security interest was perfected in January despite the refusal of the Sedgwick County Treasurer to accept the application. Old K.S.A. 84-9-403(1) provided, "Presentation for filing of a financing statement and tender of the filing fee to the filing officer constitutes filing under this article."[10] K.S.A. 2005 Supp. 84-9-516 is a similar provision under revised Article 9. That statute provides in part:

> (a) **What constitutes filing.** Except as otherwise provided in subsection (b), communication of a record to a filing office and tender of the filing fee or acceptance of the record by the filing office constitutes filing.
> **(b) Refusal to accept record; filing does not occur.** Filing does not occur with respect to a record that a filing office refuses to accept because:
> (1) The record is not communicated by a method or medium of communication authorized by the filing office;
> (2) an amount equal to or greater than the applicable filing fee is not tendered;
> (3) the filing office is unable to index the record because: . . . ;
> (4) in the case of an initial financing statement or an amendment that adds a secured party . . . ;

---

[9] For purposes of its analysis, the Court assumes that the refusal was wrongful, but makes no findings of fact or conclusions of law on the allegation.

[10] K.S.A. 84-9-403(1) (Furse 1996).

7

> (5) in the case of an initial financing statement or an amendment that provides a name of debtor which was not previously provided . . . ;
> (6) in the case of an assignment reflected in an initial financing statement . . . ;
> (7) in the case of a continuation statement . . ..
> ***
> (d) **Refusal to accept record; record effective as filed record.** A record that is communicated to the filing office with tender of the filing fee, but which the filing office refuses to accept for a reason other than one set forth in subsection (b), is effective as a filed record except as against a purchaser of the collateral which gives value in reasonable reliance upon the absence of the record from the files.

The threshold question is whether the foregoing statute applies to the perfection of security interests in titled vehicles. When so arguing, the Bank relies upon Barkley Clark's treatise on the Uniform Commercial Code, which states:

> If the filing officer is an employee of the state's department of motor vehicles and fails to record a lien on a certificate of title to a motor vehicle, the secured creditor should be protected, just as when the filing officer makes the mistake in the UCC records. The negligence of the filing officer should be irrelevant, . . .. Several cases hold that the failure to note a lender's lien on the title does not obliterate the perfected status of the lender as against innocent third-party purchasers of the titled vehicles. However, the language of some certificate of title statutes may change this result by requiring that the lien appear on the face of the title.[11]

Barkley Clark's suggestion that UCC 9-516 may apply to perfection of security interests in titled vehicles is not persuasive. The two cases cited in support[12] were decided under state law and

---

[11] 1 Barkley Clark, *The Law of Secured Transactions under the Uniform Commercial Code*, ¶ 2.17[3] (Rev. Ed. 2007).

[12] *In re Lovell*, 36 B.R. 777 (Bankr. E. D. Pa. 1984) (construing the Pennsylvania motor vehicle code in harmony with UCC 9-403); *Liberty National Bank and Trust Co. of Oklahoma City v. Garcia*, 686 P.2d 303 (Okla. App. 1984) (applying Oklahoma law under which delivery was the only statutory requirement).

predate the enactment of revised Article 9, approved by its sponsors in 1998.[13]  Likewise, the case cited for the proposition that the state certificate of title statute may change the result also was decided under state law before the enactment of revised Article 9.[14]  This Court agrees with those decisions holding that state law certificate of title statutes, not the UCC, controls whether a security interest in a titled vehicle is perfected despite errors by the officials.[15]

This Court finds that K.S.A. 2005 Supp. 84-9-516 does not apply to liens perfected under the certificate of title statutes.  The clear language of the statutes compels this interpretation.  K.S.A 2005 Supp. 84-9-516 addresses "what constitutes filing."  K.S.A. 2005 Supp. 84-9-311, concerning perfection of security interests in titled vehicles, expressly provides that "filing" is not necessary or effective to perfect a security interest in a titled vehicle.  Further the Kansas Legislature has amended K.S.A. 84-9-311, effective April 26, 2007, to provide protections for creditors secured by titled vehicles similar to those provided to financing statement filers by K.S.A. 84-9-516.[16]  If K.S.A. 2005 Supp. 84-9-516 applied to submissions to the Department of Revenue there would have been no need for the 2007 legislation.

The Kansas Motor Vehicle Code in January 2006 had no provision providing that the submission to the county treasurer of a proper application for a new certificate of title with the appropriate filing fee was sufficient to perfect a lien.  Rather, K.S.A. 8-135(c)(6) has consistently

---

[13] *See* K.S.A. 2005 Supp. 84-9-101, Official UCC Comment, ¶ 2.

[14] *Waldschmidt v. Smith (In re York)*, 43 B.R. 36 (Bankr. M.D. Tenn. 1984) (construing Tennessee law to require both filing and notation of lien on the certificate of title for perfection of security interest).

[15] *Garcia,* 686 P.2d at 303; *In re York*, 43 B.R. at 36.

[16] Bank does not argue that the 2007 amendments to K.S.A. 84-9-311, and related portions of the certificate of title statutes, apply to this case.

9

been interpreted by the Kansas Court of Appeals[17] and the Bankruptcy Court in Kansas[18] to require that perfection is not achieved until the lien is noted on the certificate of title, except where perfection of a purchase money lien is temporarily achieved through a Notice of Security Interest (NOSI). Two recent cases reject Bank's position under very similar circumstances. In *Anderson*,[19] the court held that a bank was not perfected when the electronic certificate of title did not show the lien, even though the secured creditor had mailed the application for a secured title showing its lien, along with the appropriate fees, to the Department of Revenue. The court held untenable the argument that presentation and tender were sufficient to perfect. It stated, "§ 84-9-311(b) plainly requires 'compliance' with the vehicle titling statute, not 'presentation and tender' as provided in former § 84-9-302."[20] In *Gaiser*,[21] the county treasurer made an error in processing an application for a reissued title, and the secured creditor's lien was omitted from the title issued by the Department of Revenue. The Court found the case "nearly identical to *In re Anderson*,"[22] held the creditor unperfected, and found "the reasons for the failure of the title to reflect the lien are not relevant to the Trustee's avoidance claim."[23]

---

[17] *Mid American Credit Union v. Bd. of County Comm'rs*, 15 Kan. App.2d 216, 806 P.2d 479 pet. rev. denied 248 Kan. 996 (1991); *Beneficial Finance Co. v. Schroeder*, 12 Kan. App.2d 150, 737 P.2d 52 pet. rev. denied 241 Kan. 838 (1987).

[18] *In re Anderson*, 351 B.R. at 757-58; *Morris v. First Bank of Newton (In re Gaiser)*, 2007 WL 643314, *2 (Bankr. D. Kan. 2007); *Redmond v. MHC Financial Services, Inc. (In re Barker)*, 358 B.R. 399, 408 (Bankr. D. Kan. 2007).

[19] *In re Anderson*, 351 B.R. at 752.

[20] *Id.*, 351 B.R. at 755.

[21] *In re Gaiser*, 2007 WL at 643314.

[22] *Id.*, 2007 WL at 643314, *3.

[23] *Id.*, 2007 WL at 643314, *4.

Case law has frequently rejected the defense that a secured party's lien is deemed perfected because the secured party did all it could do to accomplish perfection.[24] For example, in *Hicks*,[25] the Tenth Circuit Court of Appeals affirmed the bankruptcy court, which held that perfection of a purchase money security interest through the submission of a NOSI did not outlast the issuance of a certificate of title which did not show the lien, even though the secured creditor did all it could to perfect its interest.

In this case, the January application was not forwarded to the Department of Revenue, and the lien was not noted on the certificate of title until July11, 2006, more than 30 days after the grant of the security interest in December, 2005 and less than 90 days before the filing of the petition on September 7, 2006. Perfection could be accomplished only upon "compliance"[26] with the certificate of title statutes.[27] Submission of the application and the fee to the county treasurer was not compliance. There was not compliance until the lien was noted on the certificate of title in July. Because compliance was required, the outcome is not changed if, as urged by the Bank, the Sedgewick County Treasurer had no valid grounds to return the application.

---

[24] *In re Gaiser*, 2007 WL at 643314, *3; *In re Anderson*, 351 B.R. at 755; *Morris v. Wells Fargo Financial Acceptance Kansas, Inc. (In re Luke)*, Case no. 03-14067, Adv. no. 03-5323 (Bankr. D. Kan. Nov. 18, 2004).

[25] *In re Hicks*, 491 F.3d at 1136.

[26] K.S.A. 2005 Supp. 84-9-311(b).

[27] K.S.A. 2005 Supp. 84-9-516, which provides under some circumstances communication of a financing statement to a filing officer and tender of the filing fee or acceptance of the record by the filing officer constitutes filing, has no applicability to perfection of security interests in titled vehicles.

**CONCLUSION AS TO COMPLAINT.**

For the foregoing reasons, the Court finds that the Trustee has established that for purposes of a complaint for preferential transfer under § 547(b), the transfer of Bank's security interest occurred on July 11, 2006, less than 90 days before Debtors' filing of their Chapter 7 petition. Each element of a preferential transfer under § 547(b) is present, and the Trustee may avoid the Bank's security interest in the GMC Denali. Pursuant to §§ 550 and 551, the Trustee, not the Bank, is entitled to the vehicle or the proceeds from its sale.

**ANALYSIS AND CONCLUSION OF LAW AS TO THIRD PARTY COMPLAINT.**

Although the Third Party Complaint is not formally under advisement, the Court finds that there is no just reason to delay a final ruling on that complaint. Judgment was previously entered on count two.[28] In addition, for the reasons stated in the Findings of Fact, count one is moot. All claims raised by the Third Party Complaint have been resolved.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###

---

[28] Doc. 23.